IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LOUIS B. ANTONACCI,             )
                                )
             Plaintiff,        )
                                )
      v.                  )    C.A. No. 25-1093-CFC-EGT
                                )
DESCRYBE, LLC,             )
                                )
             Defendant.    )

## REPORT AND RECOMMENDATION

Presently before the Court is the motion of Defendant Descrybe, LLC ("Defendant" or "Descrybe") to dismiss *pro se* Plaintiff Louis Antonacci's ("Plaintiff" or "Antonacci") Complaint. (D.I. 12). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

## I.    BACKGROUND

Defendant is engaged in the business of using artificial intelligence to summarize court opinions in both English and Spanish. (*See* D.I. 1 ¶ 8). Plaintiff alleges that Defendant inaccurately summarized one of Plaintiff's previous lawsuits, namely *Antonacci v. City of Chicago*, 640 F. App'x 553 (7th Cir. Mar. 18, 2016).[1] (D.I. 1 ¶ 9). According to the Complaint, Defendant summarized a portion of the case as follows:

> Antonacci alleges that the City engaged Ponder at the Mayor's request to help secure funds for Antonacci to address significant federal tax liens on his Cook County property.

(*Id.* ¶ 10). The summary was also available in Spanish. (*Id.*). Plaintiff alleges that this is an incorrect summary of the opinion because the Seventh Circuit actually stated that "the City of

---

[1]    As it is unnecessary to consider the request, the Court makes the present recommendation without regard to Defendant's request for judicial notice. (*See* D.I. 14).

Chicago retained defendant Anita J. Ponder so that *she* could satisfy tax liens on *her* Cook County property." (*Id.* ¶ 11 (emphases added)).  Defendant's inaccurate summary allegedly defamed Plaintiff by indicating that he had tax liens on a property he does not own in Cook County. (*See id.* ¶ 24).  Plaintiff sent a cease-and-desist letter to Defendant demanding that the case summary be taken down or revised to correct the error. (*Id.* ¶ 20).  Defendant changed the summary "only by changing the pronoun 'his' to the pronoun 'her.'" (*Id.* ¶ 21).  Although not reproduced verbatim in the Complaint, the Court infers that the revised case summary read as follows:

> Antonacci alleges that the City engaged Ponder at the Mayor's request to help secure funds for Antonacci to address significant federal tax liens on her Cook County property.

(*Id.* ¶¶ 10 & 21).  Unsatisfied with this change, Plaintiff sued Defendant for defamation in this Court on August 29, 2025. (*See generally id.*).  Plaintiff asserts four counts of defamation against Defendant, two counts for the initial publication (in English and Spanish) and two counts for the corrected publication (in English and Spanish). (*Id.* ¶¶ 29-66).  Plaintiff seeks at least $5,000,000 in damages and an injunction requiring Defendant to take down the case summary. (*See id.* at 10).

## II.    <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences.  *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III. **DISCUSSION**

### A. **Choice of Law**

All of Plaintiff's claims are based on Defendant's allegedly defamatory statements. (*See* D.I. 1 ¶¶ 29-66). The parties dispute whether Virginia or Delaware law applies to these claims. (*See* D.I. 15 at 3-4; D.I. 17 at 2). Delaware federal courts apply the choice of law rules of Delaware state courts, which rely on the Restatement (Second) of Conflicts. *See Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 295 F. Supp. 2d 430, 435 (D. Del. 2003).

Under the Second Restatement, torts like defamation are governed by the law of the state that has the "most significant relationship to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICTS § 145(1). When a natural person claims to be defamed by an "aggregate communication," the state with the most significant relationship to the defamation is usually the state where the aggrieved party was domiciled at the time. *Id.* § 150(2). Publications on the internet that are accessible by anyone at any time are considered aggregate communications. *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012). Here, Defendant's statements were made on its website, which is hosted on the internet. (*See* D.I. 1 ¶¶ 26, 36, 45, 55, 65). There is

thus a presumption that Plaintiff's state of domicile has the most significant relationship to this controversy. *See Aoki*, 839 F. Supp. 2d at 765. That is Virginia. (D.I. 1 ¶ 1).

Plaintiff nevertheless argues that Delaware law should apply because Defendant is an LLC incorporated in Delaware. (*See* D.I. 15 at 3-4 (citing RESTATEMENT (SECOND) OF CONFLICTS § 150 cmt. e). The Court disagrees. The law of the state where the plaintiff resides should generally apply "even though some or all of the defamer's acts of communication were done in another state." RESTATEMENT (SECOND) OF CONFLICTS § 150 cmt. e. And although "the state . . . of the defendant's . . . incorporation" is a contact to consider in determining which state has the most significant relationship to Plaintiff's claims, *id.*, mere incorporation in Delaware is insufficient on its own to overcome the presumption that Virginia law should apply. *See Aoki*, 839 F. Supp. 2d at 765 ("sufficiently significant considerations" required to overcome the presumption).

Plaintiff also argues that Defendant "will be sued for defamation countless times in the coming years" and thus "Delaware law should apply." (D.I. 15 at 4). Even assuming that is true, it has no bearing on which state has the most significant relationship to ***Plaintiff's*** defamation claims asserted in this case. *See* RESTATEMENT (SECOND) OF CONFLICTS §§ 145(2), 150(2).

Plaintiff offers no other reason as to why Delaware law should apply to his claims. (*See* D.I. 15 at 3-4). Accordingly, the Court will apply Virginia law to Plaintiff's defamation claims.

### B.    Defamation Claims

Virginia does not distinguish between libel and slander – both written and spoken conduct may give rise to the tort of defamation. *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015). To state a claim for defamation by publication under Virginia law, a plaintiff "must plead three elements: (1) publication of (2) an actionable statement with (3) the requisite intent." *Lokhova v. Halper*, 995 F.3d 134, 145 (4th Cir. 2021) (cleaned up). For a statement to be actionable, it must be both false and defamatory. *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). Whether a

statement is defamatory is a question of law, but the Court must accept that the statement is false at the motion to dismiss stage. *See Schaecher*, 772 S.E.2d at 595; *Lokhova*, 995 F.3d at 145.

Defendant contends that the complained-of statements were not defamatory and thus not actionable. (*See* D.I. 13 at 8-12). The Court agrees. Statements are defamatory if they contain the required defamatory "sting" – *i.e.*, language that "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Schaecher*, 777 S.E.2d at 594. A statement may be either defamatory per se or defamatory per quod. *See Nieto v. Great Bridge Presbyterian Church, Inc.*, 2026 WL 874044, at *6 (Va. Ct. App. Mar. 31, 2026).

Plaintiff contends – without legal or factual support – that Defendant's statements are per se defamation. (*See* D.I. 15 at 4). A statement is defamatory per se in only limited circumstances. Relevant here, a statement is per se defamation if it "contain[s] an imputation that is 'necessarily hurtful' in its effect upon plaintiff's business and . . . affect[s] him in his particular trade or occupation." *Fleming v. Moore*, 275 S.E.2d 632, 635-36 (Va. 1981) (quoting *James v. Haymes*, 168 S.E. 333, 336 (Va. 1933); *see also Shupe v. Rose's Stores*, 192 S.E.2d 766, 767 (Va. 1972). The defamatory aspect of the statement must be made in the context of the plaintiff's trade to qualify as defamation per se. *Fleming*, 275 S.E.2d at 636.

Plaintiff argues that the statement "falsely claimed that [Plaintiff] was retained by the City of Chicago to satisfy tax liens on his Cook County real estate." (D.I. 15 at 4).[2] According to

---

[2]   Regarding the original case summary, Plaintiff impermissibly attempts to draw inferences beyond the language of the summary itself. *See Webb v. Virginian-Pilot Media Cos.*, 752 S.E.2d 808, 811 (Va. 2014). Even drawing all reasonable inferences in Plaintiff's favor, nothing in the original statement indicates that Plaintiff was hired by the City of Chicago. (*See* D.I. 1 ¶ 10). The case summary states that "the City [of Chicago] engaged ***Ponder*** . .

Plaintiff, this implies that he cannot pay off his debts to the government, which is detrimental to his reputation as a government contracts lawyer. (*See* D.I. 15 at 4). But the statement is not related to Plaintiff's work as a government contracts lawyer. It relates to Plaintiff generally. (*See* D.I. 1 ¶ 10 ("for Antonacci to address significant federal tax liens on his Cook County property")). On this point, the Virginia Supreme Court's decision in *Fleming* is instructive. There, the defendant took out a newspaper ad titled "RACISM" that stated "Moore, the occupant of little Monticello does not want any black people within his sight." *Fleming*, 275 S.E.2d at 634 n.3. The trial court permitted Moore to pursue defamation per se at trial on the theory that the statement injured his reputation as a teacher. *Id.* at 635. On appeal, the Virginia Supreme Court vacated the jury verdict of defamation per se because "the allegation of racism was not made in the context of Moore's employment as a teacher." *Id.* at 637. In the court's view, although the statement might have harmed Moore's work, the statement did not "necessarily affect him in his particular profession" and thus could not be per se defamation. *Id.* at 636. The court contrasted the published statement with the hypothetical statement that "Moore discriminated against the black students in his class," the latter of which would have been defamation per se. *Id.* at 636 n.7.

Like the published statement in *Fleming*, the Descrybe case summaries here do not necessarily affect Plaintiff's profession as an attorney because the statements do not relate to his profession or related acts. *See M. Rosenberg & Sons v. Craft*, 29 S.E.2d 375, 378 (Va. 1944) (false statement asserting plaintiff owed a debt was not defamation per se); *cf. Tronfeld v. Nationwide*

---

. to help secure funds for Antonacci to address significant federal tax liens on his Cook County property." (*Id.* (emphasis added)). The statement can only be reasonably read to suggest that Ponder was hired by the City of Chicago – not Plaintiff. Plaintiff seemingly understands this. (*See* D.I. 1 ¶¶ 12-15 (focusing exclusively on the tax lien portion of the statement)). Therefore, to the extent that Plaintiff asserts that the falsity regarding him working for Chicago is defamation per se, the Court concludes otherwise.

6

*Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006) (statement that "an attorney 'just takes people's money'" was defamation per se because it implied dishonest and criminal activity, which damaged the attorney's reputation by suggesting the attorney lacked the necessary "integrity and fitness to practice law"). Instead, the statement refers generally to Plaintiff's fictitious tax liens. Anyone – not just attorneys – can have tax liens placed on their property. These statements may adversely affect Plaintiff's reputation generally, but the statements are not specific to his trade.

Plaintiff attempts to get around this issue by arguing that the statement implies he is unable to pay his taxes which is "unbecoming" of an attorney who holds himself out as an "expert in government contracts." (D.I. 15 at 4). The Court is unpersuaded. That Plaintiff may be a government contracts attorney[3] does not change the analysis here because there is no nexus between the statements and Plaintiff's "skills or character" as a government contract attorney. *See Fleming*, 275 S.E.2d at 636 (citing RESTATEMENT (SECOND) OF TORTS § 573 cmt. e). And Plaintiff offers no explanation as to why such a nexus would exist. The false statements are not related to Plaintiff's profession and therefore do not qualify as defamation per se.

With defamation per se unavailable here, the only way that Plaintiff's claims can proceed is on a theory of defamation per quod. But defamation per quod requires a plaintiff to allege "special damages," *see Schaecher*, 772 S.E.2d at 598, which are damages that "in fact have actually occurred as the result or consequence[] of the injury complained of." *M. Rosenberg*, 29 S.E.2d at 379. Plaintiff alleges no such damages, instead seeking only "$5,000,000 of presumed damages" per claim. (*See* D.I. 1 ¶¶ 37, 46, 56 & 66). Plaintiff thus fails to plead the required elements of defamation.

---

[3]     This fact is alleged nowhere in the Complaint. (*See generally* D.I. 1).

Because the Descrybe case summaries are not defamation per se and because Plaintiff fails to allege special damages as required for defamation per quod, the Court recommends that the Complaint in its entirety be dismissed without prejudice.[4]

### C.    Virginia Anti-SLAPP Statute

Defendant contends that Plaintiff's claims are barred by the Virginia Anti-SLAPP statute and Defendant seeks fees thereunder.  (D.I. 13 at 18-19 (citing VA. CODE ANN. § 8.01-223.2 (2020))).  Because the Court recommends that Plaintiff's claims be dismissed for failing to allege actionable defamatory statements, the Court does not reach this issue.  *See Rolofson v. Fraser*, 904 S.E.2d 284, 296 (Va. Ct. App. 2024); *see generally* VA. CODE ANN. § 8.01-223.2(C) (2025).

*    *    *

The Court has recommended that the Complaint be dismissed in its entirety.  To the extent that Plaintiff wishes to amend his pleading to cure the deficiencies identified herein, he may seek leave to amend using the proper procedure for doing so within thirty (30) days of the adoption of this Report and Recommendation.  *See LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)); *see also Fletcher-Harlee Corp v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007) ("In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.").

---

[4]    All of Plaintiff's claims are for defamation.  (*See* D.I. 1 ¶¶ 29-37 (Count I – initial defamation in English); *id.* ¶¶ 38-46 (Count II – initial defamation in Spanish); *id.* ¶¶ 47-56 (Count III – subsequent defamation in English); *id.* ¶¶ 57-66 (Count IV – subsequent defamation in Spanish)).  Although Count V is called "Injunction," it is simply a request for injunctive relief that rises and falls with the preceding counts on the merits.  (*Id.* ¶¶ 67-71).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 12) be GRANTED.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to eight (8) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: May 29, 2026

_____
UNITED STATES MAGISTRATE JUDGE

9